UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOLOMON ISRAEL,

       Plaintiff,

v.

BRITTANY SMITH
(LESSARD),
DEVIN URBANOWSKI,
PRA RECEIVABLES
MANAGEMENT, L.L.C., and
SIGNATURE RECOVERY
SERVICES, INC.,

       Defendants.[1]

_____/

Case No. 4:24-cv-13167
District Judge Shalina D. Kumar
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS SMITH (LESSARD), URBANOWSKI, AND PRA RECEIVABLES MANAGEMENT, L.L.C.'S MOTION TO DISMISS (ECF No. 25) and GRANT DEFENDANT SIGNATURE RECOVERY SERVICES, INC.'S MOTION TO DISMISS (ECF No. 27)**

**I.    RECOMMENDATION**: The Court should **GRANT** Defendants Smith (Lessard), Urbanowski, and PRA Receivables Management, L.L.C.'S motion to dismiss (ECF No. 25) and **GRANT** Defendant Signature Recovery Services, Inc.'s motion to dismiss (ECF No. 27).

---

[1] PRA Receivables Management, L.L.C.'s and Brittany Lessard's names have been adjusted based on their November 27, 2024 notice of removal. (*See* ECF No. 1, PageID.1 nn.1,2.)

## II.     REPORT:

### A.     Background

On October 23, 2024, Plaintiff filed this consumer credit lawsuit on his own behalf in state court against PRA Receivables Management (PRA RM), two of its employees (Brittany Smith (Lessard) & Devin Urbanowski), and Signature Recovery Services, Inc. (SRS). (ECF No. 1, PageID.12; *see also id*., PageID.13-29 (Ex. Nos. 1-16).)  The PRA RM Defendants removed the case to this Court on November 27, 2024.  (ECF No. 1; *see also* ECF Nos. 2, 3, 4, 5.)

Judge Kumar has referred this case to me for full pretrial matters.  (ECF No. 8.)

### B.     The PRA RM Defendants' Motion for a More Definite Statement

In December 2024, the PRA RM Defendants filed a motion for a more definite statement (ECF No. 7), in which Defendant SRS joined (ECF No. 12).  In February 2025, Plaintiff filed what the Court has construed as a response (ECF No. 14), and, on March 12, 2025, the Court entered an order, which, *inter alia*, granted the motion for a more definite statement, further stating:

> . . . no later than **April 10, 2025**, Plaintiff **SHALL** file an amended complaint – one that makes clear not only which individuals and/or entities are being sued, but also which statutes the specified Defendants are alleged to have violated (e.g., if the Fair Debt Collection Practices Act (FDCPA), which is codified at 15 U.S.C. §§ 1692-1692p, then which section).  In drafting his amended complaint,

2

Plaintiff's attention is drawn to Fed. R. Civ. P. 8(a) ("Claim for Relief.") and Fed. R. Civ. P. 10 ("Form of Pleadings"). Plaintiff might also consider making use of this district's form Complaint for a Civil Case or form Amended Complaint for a Civil Case, each of which is available via the Court's website (www.mied.uscourts.gov). Moreover, "[a]ny amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." E.D. Mich. LR 15.1.

(ECF No. 20, PageID.185 (emphases in original).)

Plaintiff sought an extension of the April 10, 2025 deadline (*see* ECF No. 21), which the Court granted, extending it to May 30, 2025. (ECF No. 22.) On May 23, 2025, he filed another response to the motion for a more definite statement (*see* ECF No. 23), and, on May 27, 2025, he separately filed an attachment thereto (*see* ECF No. 24). Plaintiff *did not* file an amended complaint by May 30, 2025.

## C.    Pending Matters

Currently before the Court are: (1) the PRA RM Defendants' June 25, 2025 motion to dismiss (ECF No. 25), which is based on challenges to Plaintiff's May 23, 2025 response (*see id.*, PageID.207); and, (2) Defendant SRS's July 2, 2025 motion to dismiss (ECF No. 27), which contends Plaintiff has failed "to state a claim upon which relief can be granted . . . [,]" and "to comply with the Court's order to file an amended complaint by May 30, 2025 . . . [,]" (*id.*, PageID.221).

3

Responses to these motions were due on July 21, 2025 and July 25, 2025, respectively.  (ECF Nos. 26, 28.)

On July 21, 2025, 52 days after the May 30, 2025 deadline, Plaintiff filed a three-page amended complaint, which contains only certain pages of this Court's form "Complaint for a Civil Case."  (ECF No. 30.)  It lists only PRA RM and SRS as Defendants (*i.e.*, it does not list individual Defendants Smith (Lessard) or Urbanowski); accordingly, the Clerk of the Court has terminated Smith (Lessard) and Urbanowski as Defendants.  *See also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.").  Plaintiff's statement of claim is as follows:  "The lien on the repossessed vehicle was not . . . properly transferred, and defendants received several requests to furnish plaintiff wi[th] legal documents of transfer of l[ie]n."  (*Id.*, PageID.241.)

On July 28, 2025, the PRA RM Defendants filed a reply in support of their motion to dismiss (ECF No. 32), as to which Defendant SRS has filed its concurrence and joinder (ECF No. 33).

On November 19, 2025 – due to Plaintiff's August 2025 notice of change of address/contact information (*see* ECF No. 35) – the Court extended Plaintiff's deadline to respond to the pending motions to dismiss (*see* ECF Nos. 25, 27) to December 15, 2025.  (ECF No. 36.)  Plaintiff filed a response on November 19,

2025 (ECF No. 37), *i.e.*, the same day the Court entered the order extending the deadline.

On November 24, 2025, the PRA RM Defendants filed a reply (ECF No. 38), in which Defendant SRS has concurred and joined (ECF No. 39).

### D.     Fed. R. Civ. P. 12

The PRA RM Defendants bring their motion to dismiss pursuant, in part, to Fed. R. Civ. P. 8(a)(2), which provides:  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  (ECF No. 25, PageID.207, 211-212.)  Similarly, Defendant SRS brings its motion to dismiss by arguing, in part, that Plaintiff has failed "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  (ECF No. 27, PageID.230-233.)  *See Mark Plastic Prods., Inc. v. Exxon Corp.*, No. 40169, 1973 WL 883, at *1 (E.D. Mich. Nov. 1, 1973) (Kaess, C.J.) ("In deciding a motion to dismiss for failure to state a claim upon which relief can be granted [F. R. Civ. P. 12(b)(6)], the Court must look to the standards set forth in Federal Rules of Civil Procedure 8(a)(2) and 9(b).").

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"

6

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., *adopting report and recommendation of* Binder, M.J.).[2]

### E.    Discussion

#### 1.    Factual allegations

In his original state court complaint, utilized here for background, Plaintiff

describes his lawsuit as concerning "a time barred debt" that resulted in

repossession of a "2009 Mercedes Benz SL 550 . . . ." (ECF No. 5-2,

PageID.103.) It seems Plaintiff purchased this vehicle pursuant to a retail

installment sale or credit sale contract with Ally Financial, Inc. dated June 30,

2016. (ECF No. 5-2, PageID.107; ECF No. 23, PageID.198.)

In a March 12, 2024 letter, PRA RM informed Plaintiff that it was trying to

collect a debt "previously owed to Ally Bank and sold to [PRA RM] by Ally

Bank." (ECF No. 5-2, PageID.105-106.) The letter explained that: (a) as of

February 28, 2018, Plaintiff owed $32,363.57; (b) between February 28, 2018 and

the date of the letter, Plaintiff was charged $22,899.56 in interest; and, (c) the total

amount of the debt was then $55,263.13. (*Id.*, PageID.105.)

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

Plaintiff alleges that, on September 30, 2024 at 1:30 a.m., SRS "towed the car[,]" and "the tow truck driver stated he was towing for ALLY Financial[;]" however, Plaintiff alleges a deputy informed him that PRA RM "had it towed . . . ." (*Id*., PageID.103.)  Plaintiff claims he called ALLY and was informed he "had a zero outstanding balance and gave [him] [PRA RM's] phone number." (*Id*.)[3]

On October 2, 2024, PRA RM wrote to Plaintiff, explaining, *inter alia*, that it had received a dispute related to his account, he may not owe the debt, the law "limits how long you can be sued on a debt[,]" PRA RM did not intend to sue on the debt, but it had his vehicle "because [he] broke promises in [the] Agreement[,]" and intended to "sell the Vehicle at a private sale sometime after [October 23, 2024]." (*Id*., PageID.107, 108.)  The letter, signed by Brittany Smith, also stated: "You can get the Vehicle back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.  To learn the exact amount you must pay, call us at (800) 642-6233." (*Id*.)

---

[3] The record of this case contains a copy of a State of Michigan Certificate of Title, issued on September 30, 2024, for a 2009 Mercedes Benz SL 550, and it lists Solomon Israel as the owner, Ally Financial as the first secured party (with a filing date of June 30, 2016), and Omnee Israel as the second secured party (with a filing date of September 30, 2024).  (ECF No. 23, PageID.198.)  However, Ally Financial's alleged communication that Plaintiff had a "zero balance" should not surprise anyone, as it is consistent with the representation that it no longer held the loan, but had transferred it to PRA RM, which would include any outstanding balance.

The attachments to Plaintiff's pleading suggest that he emailed PRA RM "requesting original payments," seemingly on or about October 10, 2024.  (*Id.*, PageID.104, 120.)[4]  Plaintiff alleges that, on October 17, 2024, he went to the Post Office to pick up certified mail, which Mr. Devin had told him minutes before contained Plaintiff's information, such as a down payment in 2016 and every payment he made before defaulting on the loan, "which was approximately 16 payment[s] of approximately $600 plus monthly."  (*Id.*, PageID.103.)  Plaintiff further alleges that, after retrieving the mail and opening it, there were no figures, as Mr. Devin had mentioned; rather, there was "a notice to sell the car on the 23rd of . . . October[,]" which was less than a week away (from the date he retrieved the letter from the post office).  (*Id.*)

Plaintiff's state court complaint is dated October 18, 2024, although it was not filed until a few days later.  (*Id.*, PageID.103.)  Plaintiff alleges he has been waiting 18 days to hear from PRA RM with "the amount and interest owed so [he] could make arrangements for [a] payment plan."  (*Id.*)  Plaintiff alleges that he was never contacted to make a payment plan.  (*Id.*)  He also alleges that his exhibits

---

[4] It is not clear whether the attached October 10, 2024 email, which appears to have been written to former Defendant Devin Urbanowski (*see* ECF No. 5-2, PageID.104, 120), was sent to either Defendant PRA RM or Defendant SRS.

contain "a suggested plan [he is] comfortable with[,] but the time for negotiating is about up before the car is sold." (*Id.*)[5]

### 2.      Causes of action

In his May 23, 2024 state court complaint, Plaintiff seeks "to get a day in court to address every violation of [his] FDPCA [sic] rights starting with . . .

1)      Deception in towing process,

2)      Time barred,

3)      Excessive unlawful interest sought for,

4)      Preventing debtor from arranging payment agreement,

5)      Deception in stating the[y] were sending purchase info such [as] down payment, every payment made before default.

(ECF No. 5-2, PageID.103.)  Plaintiff also seeks "damages for the value of the car $18,000 for [compatible] car."  He additionally seeks "any attorney fees [he] may [incur] and loss of work until [he] [can] pay for loan car and <u>no</u> tow charge." (*Id.* (emphasis in original).)

> ### 3.      SRS and PRA RM are entitled to dismissal of Plaintiff's FDCPA claims against them under Fed. R. Civ. P. 8(a)(2) and/or 12(b)(6).
>
> #### a.      Sparse mention of action by SRS

---

[5] Here, Plaintiff appears to refer to an attached October 18, 2024 email, which begins with the phrase "car loan calculator," (*see* ECF No. 5-2, PageID.104, 119); however, it is not clear whether Plaintiff sent this email to either Defendant PRA RM or Defendant SRS.

In the original complaint, Plaintiff states only that SRS "towed the car[,]" "the tow truck driver stated he was towing for ALLY Financial," but, based on what he learned from non-party Deputy Berquist, "PRA [RM] had it towed . . . ." (ECF No. 5-2, PageID.103.)  In his May 23, 2025 response to the motion for a more definite statement, Plaintiff contends that SRS "called the Oakland County Sheriff's Department to report intent to tow" the car, and SRS "misrepresented itself as towing on behalf of Ally Financial."  (ECF No. 23, PageID.194-195 ¶ 1.) In the July 21, 2025 amended complaint, the "statement of claim" simply refers to "defendants."  (ECF No. 30, PageID.241.)

If Plaintiff intends to claim that there was "deception in [the] towing process," perhaps because the SRS driver allegedly misrepresented Ally Financial (instead of PRA RM) as the entity on behalf of which the vehicle was being towed, then the basis of an FDCPA claim against SRS is unclear, because the text of the original complaint does not indicate which FDCPA subsections are at issue or against whom they are invoked (*see* ECF No. 5-2, PageID.103) and specific FDCPA sections – *e.g.*, 15 U.S.C. § 1692e ("False or misleading representations"), 15 U.S.C. § 1692f ("Unfair practices") – are only mentioned in the pleading's attachments (ECF No. 5-2, PageID.112-114).  And, while Plaintiff's May 23, 2025 response to the motion for a more definite statement cites 15 U.S.C. § 1692e and contends that the FDCPA "prohibits deceptive practices in debt collection,

11

including false representation of the creditor's identity[,]" Plaintiff's related contention that his complaint alleges PRA RM and SRS "unlawfully towed [his] vehicle without any valid lien transfer[,]" (ECF No. 23, PageID.195 ¶ 3), appears to be a claim against the purported owner of the debt.  Indeed, Plaintiff contends in his May 23, 2025 response to the motion for a more definite statement that PRA RM "admitted responsibility." (ECF No. 23, PageID.195 ¶ 1.)  And the amended complaint focuses entirely on the question of whether legal documents of transfer (between Ally and PRA RM) exist.  (*See* ECF No. 30, PageID.241.)

### b.    Mention of action by PRA RM

By comparison, Plaintiff's allegations against PRA RM are a bit more developed.  The March 12, 2024 letter from PRA RM identifies itself as a debt collector and explains that the debt "was previously owed to Ally Bank and was and sold to Portfolio Recovery Associates, LLC by Ally Bank."  (ECF No. 5-2, PageID.105-106.)[6]  PRA RM's October 2, 2024 letter admits it has Plaintiff's vehicle because he "broke promises in [their] Agreement."  (*Id*., PageID.107-108.) These letters, each of which is attached to Plaintiff's original pleading, along with the text of Plaintiff's original complaint, which is outlined in detail above (*see id*., PageID.103), make clear that Plaintiff is suing PRA RM for matters related to the

---

[6] In an October 18, 2024 email, Plaintiff claims to have been told that PRA RM purchased the Ally Financial account in September of 2023 or September 2024. (ECF No. 5-2, PageID.119.)

repossession of his vehicle, such as having his car towed on September 30, 2024, contents (or lack thereof) of the October 2, 2024 letter, and no contact to make a payment plan. Moreover, his May 23, 2025 response to the motion for a more definite statement contends PRA RM "has not produced any documentation showing a valid transfer of lien prior to the tow[,]" and also contends his vehicle was "unlawfully towed . . . without any valid lien transfer." (ECF No. 23, PageID.195 ¶¶ 1, 3.) Additionally, the July 21, 2025 amended complaint makes clear that Plaintiff is contesting the transfer of the lien on his vehicle. (*See* ECF No. 30, PageID.241.) Relatedly, Plaintiff's November 19, 2025 filing characterizes his July 21, 2025 amended complaint (*see* ECF No. 30) as concerning Defendants' "failure to produce a proper change of lien from Ally Financial" to Defendants. (ECF No. 37, PageID.258.)

Still, even after combing through Plaintiff's multiple filings to discern his FDCPA claim against PRA RM, he has not provided "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and/or has not "state[d] a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6). First, the text of Plaintiff's original pleading refers only to the "FDCPA." (ECF No. 5-2, PageID.103.) If Plaintiff intended to bring a cause of action based on the FDCPA (15 U.S.C. §§ 1692-1692p), he must do more than attach copies of federal statutes, an article from the Consumer Financial Protection

13

Bureau (cfpb.gov/), or an editorialized "history" of PRA RM's "unlawful tactics." *See* ECF No. 5-2, PageID.112-115; ECF No. 23, PageID.197, 200 (https://www.consumerfinance.gov/enforcement/actions/portfolio-recovery-associates-llc/) (last visited Feb. 16, 2026).  And the July 21, 2025 operative amended complaint contains even less than that, notwithstanding the Court's March 12, 2025 warning that the entire pleading as amended must be reproduced, without incorporation of prior pleadings.  (*See* ECF No. 20, PageID.185) (citing E.D. Mich. LR 15.1).)  Neither the Court nor the parties may be forced to guess at what Plaintiff's claims are or exactly against whom they are asserted.  Indeed, the purpose of the complaint is to "'give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]'"  *Bell Atl. Corp.*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, notwithstanding the Court's March 12, 2025 guidance about filing his amended complaint (*see* ECF No. 20, PageID.184-185), Plaintiff's three-page July 21, 2025 amended complaint – although perhaps clarifying the parties to be sued by eliminating the two individual Defendants – does not mention the "FDCPA" or *any* of its seventeen sections, 15 U.S.C. §§ 1692-1692p.  (*See* ECF No. 30, PageID.239-241.)  Instead, the amended complaint simply states:  "The lien on the repossessed vehicle was not . . . properly transferred, and defendants

14

received several requests to furnish plaintiff wi[th] legal documents of transfer of l[ie]n." (*Id.*, PageID.241.)

Third, while Plaintiff's original complaint and amended complaint are deficient when describing an FDCPA claim against PRA RM, Plaintiff's May 23, 2025 response to the motion for a more definite statement (*see* ECF No. 23) does not aid his cause, even if the Court could look beyond the pleadings to determine who is being sued and for what. *See Brown v. Newrez, L.L.C.*, No. 4:25-cv-11552, 2025 WL 4079893, at *2 (E.D. Mich. Nov. 4, 2025) (Patti, M.J.) ("the Court looks to the pleadings to define his claims"), *report and recommendation adopted sub nom. Brown v. Newrez, LLC*, No. 25-11552, 2026 WL 330713 (E.D. Mich. Feb. 6, 2026) (Kumar, J.). Where he states *in his response brief*, "[m]y Complaint identifies the actors (Signature and PRA), the date, time, location, vehicle, and the deceptive misrepresentation in violation of the FDCPA, 15 U.S.C. § 1692[,]" (ECF No. 23, PageID.195 ¶ 2), this section concerns "congressional findings and declaration of purpose" and does nothing to clarify the specific statutory basis of Plaintiff's FDCPA claim. Where he cites 15 U.S.C. § 1692e, which generally provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" (*id.*), and contends that the FDCPA "prohibits deceptive practices in debt collection, including false representation of the creditor's identity[,]" (ECF No. 23,

15

PageID.195 ¶ 3), one is left to wonder under which of Section 1692e's sixteen subsections Plaintiff brings his FDCPA claim.  Although the exact date of PRA RM's alleged purchase of Plaintiff's debt from Ally Financial (Account No. 67392445595) is unclear, it seems Plaintiff was made aware of the purchase as early as the March 12, 2024 letter from PRA RM (*see* ECF No. 5-2, PageID.105-106), if not also again in September or October 2024 (*see id.*, PageID.119), and each of these is attached to Plaintiff's original complaint.  If Plaintiff's amended complaint's allegations challenging the transfer of the lien to PRA RM and his requests for "legal documents of transfer" (*see* ECF No. 30, PageID.241) take issue with PRA RM's October 2, 2024 letter, which is also attached to the original complaint and indicates PRA RM "has received a dispute(s) relating to this account[,]" (*see* ECF No. 5-2, PageID.107), it is likewise not clear on what federal legal basis – *e.g.*, what section of the FDCPA – the challenge lies.  To the extent Plaintiff requests that the Court "[o]rder Defendants to produce valid transfer-of-lien documentation dated prior to September 30, 2024[,]" or otherwise, "order immediate release of [his] 2009 Mercedes-Benz SL500 to [him][,]" (ECF No. 23, PageID.196 ¶¶ 2, 3), it would have to be tied to "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), or "a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).  His pleadings

fail to make that basic showing, regardless of which iteration of them is scrutinized.

### 4.      State law causes of action

Although state law claims were alluded to in the vaguest manner by simply attaching statutes and an "AI Overview" to his *original* pleading (*see* ECF No. 5-2, PageID.109-111, 116-118), the amended, operative pleading makes no mention of state law.  But even if the Court, for the sake of argument, ignored the amended complaint and reverted its gaze back to his original complaint, the Court still could not ferret out the intended claims from the many Michigan statutory sections referenced within the attachments to Plaintiff's original complaint, such as Michigan's Uniform Commercial Code (*id.*, PageID.116-117), Michigan's Motor Vehicle Sales Finance Act (*id.*, PageID.109-110), and Michigan's Vehicle Code (*id.*, PageID.117), or related material from the Department of Insurance and Financial Services (*id.*, PageID.111).  For example, simply attaching an article mentioning Michigan's adoption of the UCC and Mich. Comp. Laws § 440.9503 to his pleading (*see* ECF No. 5-2, PageID.116-117) does not suffice to state a claim. The same is true of Plaintiff's May 27, 2025 submission of copies of Michigan's UCC (ECF No. 24, PageID.202), Michigan's Consumer Protection Act (*id.*, PageID.203), and AI generated "Case Law Guidance" (*id.*, PageID.204) as supplemental attachments to his response  to the motion for a more definite

17

statement.  "[I]t is [a party's] burden to tell us and make the argument because '[j]udges are not like pigs, hunting for truffles' that might be buried in the record." *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 585 (6th Cir. 2018) (quoting *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x. 733, 736 (6th Cir. 2011)) (further internal citations omitted).

Likewise, to the extent Plaintiff's "time-barred" allegation is intended to allege it is too late to *collect* on this debt – as opposed to being too late *to bring suit*, which Defendant never did and, in fact, disavowed (*see* ECF No. 5-2, PageID.103, 106-108) – he has not provided a legal or statutory basis for such an affirmative claim based on one of Michigan's many statutes concerning limitation of actions (*see* Mich. Comp. Laws § 600.5801 to 600.5869), which are normally just asserted as a *defense* to a claim.  He must do more than allege that the *collection/enforcement* of the debt or the repossession is "time barred" (ECF No. 5-2, PageID.103), attach an article concerning "Statute of Limitations on Car Repossession" (*id.*, PageID.116-117), and attach an "AI Overview" of "statute of limitations on debt . . . [,]" which mentions "time-barred debt" (*see id.*, PageID.118).  As it stands, the legal or statutory basis for such a claim is unclear.

F.     Conclusion

Having reached the foregoing conclusions based on Fed. Rules Civ. P. 8(a)(2) and 12(b)(6), the Court need not address Defendants' arguments based on

18

Fed. R. Civ. P. 41(b) ("Involuntary Dismissal; Effect."). (*See* ECF No. 25, PageID.212; ECF No. 27, PageID.227-230.) As explained at length and in detail above, the Court should **GRANT** both motions to dismiss (ECF Nos. 25, 27.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

19

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  February 20, 2026

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

20